## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------

JOSEPH SHERIDAN,

                    Plaintiff,

         v.

MSG NETWORKS INC., JOSEPH M. COHEN, JOSEPH J. LHOTA, JOEL M. LITVIN, JOHN L. SYKES, JAMES L. DOLAN, AIDAN J. DOLAN, KRISTIN A. DOLAN, PAUL J. DOLAN, THOMAS C. DOLAN, WILLIAM J. BELL, STEPHEN C. MILLS, HANK J. RATNER, and BRIAN G. SWEENEY,

                    Defendants.

----------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No._____

COMPLAINT

DEMAND FOR JURY TRIAL

       Plaintiff Joseph Sheridan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

       1.    Plaintiff brings this action against MSG Networks Inc. ("MSGN" or the "Company") and the members of MSGN's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by Madison Square Garden Entertainment Corp. ("MSG Entertainment") (the "Proposed Transaction").

2.     On March 25, 2021, MSGN and MSG entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which MSGN shareholders will receive 0.172 shares of MSG Entertainment Class A or Class B common stock for each share of MSGN Class A or Class B common stock they own.

3.     On June 4, 2021, MSGN filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction.  The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible

under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, the Company's headquarters are located in this District and the Company's stock trades on the New York Stock Exchange, which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of MSGN.

9.     Defendant MSGN is a Delaware corporation, with its principal executive offices located at 11 Pennsylvania Plaza, New York, NY 10001.  MSGN's shares trade on the New York Stock Exchange under the ticker symbol "MSGN."

10.     Defendant Joseph M. Cohen is, and has been at all relevant times, a director of the Company.

11.     Defendant Joseph J. Lhota is, and has been at all relevant times, a director of the Company.

12.     Defendant Joel M. Litvin is, and has been at all relevant times, a director of the Company.

13.     Defendant John L. Sykes ("Sykes") is, and has been at all relevant times, a director of the Company.

14.     Defendant James L. Dolan is, and has been at all relevant times, Executive Chairman and a director of the Company.

15.     Defendant Aidan J. Dolan is, and has been at all relevant times, a director of the Company.

16.     Defendant Charles F. Dolan is, and has been at all relevant times, a director of the Company.

17.     Defendant Kristin A. Dolan is, and has been at all relevant times, a director of the Company.

18.     Defendant Paul J. Dolan is, and has been at all relevant times, a director of the Company.

19.     Defendant Thomas C. Dolan is, and has been at all relevant times, a director of the Company.

20.     Defendant William J. Bell is, and has been at all relevant times, a director of the Company.

21.     Defendant Stephen C. Mills is, and has been at all relevant times, a director of the Company.

22.     Defendant Hank J. Ratner is, and has been at all relevant times, a director of the Company.

23.     Defendant Brian G. Sweeney is, and has been at all relevant times, a director of the Company.

24.     Defendants identified in paragraphs 10-23 are referred to herein as the "Board" or the "Individual Defendants," and together with MSGN, "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company

25.     MSGN owns and operates two regional sports and entertainment networks and a companion streaming service that serve the New York Designated Market Area ("DMA"), as well as other portions of New York, New Jersey, Connecticut and Pennsylvania.  MSGN, a pioneer in sports media, owns and operates two award-winning regional sports and entertainment networks, MSG Network and MSG+, and a companion streaming service, MSG GO, that serve the nation's number one media market, the New York DMA, as well as other portions of New York, New Jersey, Connecticut and Pennsylvania.

### B.  The Proposed Transaction

26.     On March 26, 2021, MSGN and MSG Entertainment issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> NEW YORK--Madison Square Garden Entertainment Corp. ("MSG Entertainment") (NYSE: MSGE) and MSG Networks Inc. ("MSG Networks") (NYSE: MSGN) today announced they have reached a definitive agreement for MSG Entertainment to acquire MSG Networks in an all-stock, fixed exchange ratio transaction.

> The merger is expected to be tax-free for both MSG Entertainment and MSG Networks and their stockholders.  Upon the closing of the transaction, MSG Networks stockholders would receive 0.172 shares of MSG Entertainment Class A or Class B common stock for each share of MSG Networks Class A or Class B common stock they own.  The exchange ratio is approximately 4% above the ratio of the unaffected closing stock prices of the two companies on March 10, 2021, the last trading day before a press report speculated on a potential transaction.

This transaction would create a leading entertainment and media company with a more diversified revenue base that would be well positioned to deliver innovative experiences across all of its assets. The combined company would have a stronger liquidity position to support its live entertainment business, which following the shutdown of its venues due to the pandemic, is now on a path back to normal operations. In addition, the new company would have enhanced financial flexibility to fund current growth initiatives, including its planned state-of-the-art venue in Las Vegas, MSG Sphere at The Venetian, as well as future opportunities across both entertainment and media.

With the acquisition of MSG Networks, MSG Entertainment anticipates it would capture more of the emerging revenue opportunity related to the potential expansion of legalized sports gaming in its market. The combination of the companies' media, digital and venue assets creates a powerful platform for potential sports gaming partners, which is expected to generate significant incremental revenue in the years ahead.

MSG Entertainment President Andrew Lustgarten said: "MSG Entertainment is actively executing a plan designed to grow the Company beyond its established collection of assets into one that is pioneering the next generation of entertainment. We have always believed in the value of live sports and look forward to welcoming MSG Networks back into the fold as part of a transaction that we are confident would enhance our financial flexibility and set the stage for continued growth and value creation."

MSG Networks President and CEO Andrea Greenberg said: "We anticipate significant benefits from rejoining MSG Entertainment, including creating a combined company with greater diversification and resources. This would, in turn, help drive new innovative opportunities across both the entertainment and media businesses, ultimately creating significant value for our collective shareholders."

In addition to forming a diversified company with enhanced financial flexibility, it is anticipated that the combined company would realize meaningful tax efficiencies. As of December 31, 2020, MSG Entertainment had a federal net operating loss (NOL) of approximately $250 million, primarily due to the temporary shutdown of its venues as a result of COVID-19. Furthermore, MSG Entertainment expects to accelerate the depreciation of significant components of the capital investment for MSG Sphere in Las Vegas in calendar 2023, which is when the venue is expected to open. As a result of this transaction, the combined company would be able to more efficiently utilize MSG Entertainment's existing NOL, as well as future bonus depreciation related to MSG Sphere in Las Vegas, to offset the taxable income of all of its businesses, including MSG Networks, which today is a full state and federal income tax cash payer.

MSG Networks is a leader in sports content development and distribution that generates significant revenue, adjusted operating income, and free cash flow. For

fiscal year 2020, MSG Networks generated revenue of $685.8 million, operating income of $295.0 million, adjusted operating income of $321.4 million, net cash provided by operating activities of $210.0 million, and free cash flow of $207.2 million.  The media company's two networks, MSG Network and MSG+, operate in the nation's number one media market, the New York DMA, as well as other portions of New York, New Jersey, Connecticut and Pennsylvania.  The networks deliver exclusive live local games of the New York Knicks, New York Rangers, New York Islanders, New Jersey Devils and Buffalo Sabres, as well as significant coverage of the New York Giants and Buffalo Bills.

While MSG Networks continues to operate in an evolving media landscape, the Company reported for its fiscal 2021 second quarter a sequential improvement in its year-over-year rate of subscriber decline, which has continued to improve so far during the fiscal 2021 third quarter.  And with the 2020-21 NBA and NHL seasons, MSG Networks is currently enjoying significant year-over-year increases in viewership for both its linear networks and MSG GO streaming app, which helps drive the Company's advertising revenue.

MSG Entertainment's portfolio features iconic venues, including Madison Square Garden; production assets such as the Radio City Rockettes and the Christmas Spectacular and a majority interest in Tao Group Hospitality.

MSG Entertainment is actively pursuing its vision for MSG Sphere – new, state-of-the-art venues that will reinvent the entertainment experience.  Construction is well underway on MSG Sphere in Las Vegas, and the Company continues to pursue its plans for an additional MSG Sphere in London, pending necessary approvals.

The definitive agreement was exclusively negotiated and unanimously approved by Special Committees of MSG Entertainment's and MSG Networks' boards, both of which are comprised entirely of independent directors.  The agreement was also unanimously approved by the Boards of Directors of both MSG Entertainment and MSG Networks.

The transaction is subject to approval by a majority of the combined voting power of the outstanding shares of MSG Networks Class A common stock and Class B common stock.  MSG Entertainment's issuance of its common stock in the transaction is subject to approval by a majority of the combined voting power of the votes cast by the holders of shares of MSG Entertainment Class A common stock and Class B common stock and, separately, the issuance of MSG Entertainment Class B shares must be approved by the holders of not less than 66 2/3% of the voting power of the outstanding shares of MSG Entertainment Class B common stock.  The Special Committee of the Board of Directors of MSG Networks, and the full board, based on the recommendation of the MSG Networks Special Committee, have each recommended that MSG Networks stockholders adopt the merger agreement.  The Special Committee of the Board of Directors of MSG Entertainment, and the full Board, based on the recommendation of the MSG

Entertainment Special Committee, have each recommended that MSG Entertainment stockholders approve the issuance of MSG Entertainment common stock required for the transaction.

The holders of all of the outstanding shares of MSG Networks Class B common stock and MSG Entertainment Class B common stock, who have sufficient votes to approve the transaction, have entered into voting agreements pursuant to which they have agreed to vote all of the MSG Networks Class B common stock and MSG Entertainment Class B common stock in favor of the adoption of the merger agreement and the issuance of MSG Entertainment common stock required for the transaction, respectively.

The transaction, which is also subject to customary closing conditions, is expected to be completed during the third quarter of calendar 2021. Upon the closing of the transaction, a current director of MSG Networks elected by the holders of its Class A common stock would be appointed as a director of MSG Entertainment.

Moelis & Company LLC and The Raine Group are serving as independent financial advisors and Wachtell, Lipton, Rosen & Katz is serving as independent legal counsel to the Special Committee of the Board of Directors of MSG Entertainment. LionTree Advisors LLC and Morgan Stanley & Co. LLC are serving as independent financial advisors and Davis Polk & Wardwell LLP is serving as independent legal counsel to the Special Committee of the Board of Directors of MSG Networks. Debevoise & Plimpton LLP is serving as legal counsel to the Dolan family.

**C. The Proxy Statement Contains Material Misstatements and Omissions**

27.      On June 4, 2021, Defendants filed the materially incomplete and misleading Proxy Statement with the SEC and disseminated it to MSGN's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

28.      Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29.     The Proxy Statement omits material information regarding the Company's and MSG Entertainment's financial projections.

30.     First, the Proxy Statement omits material information concerning MSGN's and MSG Entertainment's financial projections, including the line items underlying: (i) adjusted operating income; (ii) free cash flow from operations for MSGN; and (iii) free cash flow for MSG Entertainment.

31.     Second, the Proxy Statement omits material information regarding the financial analyses performed by LionTree Advisors LLC ("LionTree") and Morgan Stanley & Co. LLC ("Morgan Stanley").

32.     With respect to LionTree's and Morgan Stanley's Selected Publicly Traded Companies Analysis for MSGN, the Proxy Statement fails to disclose the individual multiples and financial metrics for the each of the companies observed in the analyses.

33.     With respect to LionTree's and Morgan Stanley's Selected Publicly Traded Companies Analysis for MSG Entertainment, the Proxy Statement fails to disclose the individual multiples and financial metrics for the each of the companies observed in the analyses.

34.     With respect to LionTree's and Morgan Stanley's Discounted Cash Flow Analyses of MSGN, the Proxy Statement fails to disclose: (i) the terminal values of MSGN as of December 31, 2025; and (ii) the individual inputs and assumptions underlying the discount rates ranging from 6.0% to 7.0%.

35.     With respect to LionTree's and Morgan Stanley's Discounted Cash Flow Analyses of MSG Entertainment, the Proxy Statement fails to disclose: (i) the terminal values of MSG Entertainment as of December 31, 2025; and (ii) the individual inputs and assumptions underlying

the discount rates ranging from 7.25% to 8.25% utilized by LionTree and 7.29% to 8.49% utilized by Morgan Stanley.

36.     With respect to LionTree's and Morgan Stanley's research analysts' price targets analysis, the Proxy Statement fails to disclose the specific price targets observed as well as the sources thereof.

37.     Third, the Proxy Statement fails to disclose material information concerning Morgan Stanley's potential conflicts of interest.

38.     The Proxy Statement fails to disclose the amount of compensation Morgan Stanley received from MSGN and AMC Networks Inc. (an affiliate of MSG Entertainment and MSGN) for financing services and the amount of compensation Morgan Stanley received for financial advisory services to the MSGN Special Committee in connection with prior discussions involving a strategic transaction with MSG Entertainment.

39.     The omission of the above-referenced material information renders the following sections of the Proxy Statement false and misleading: "Unaudited Prospective Financial Information" and "Summary of LionTree and Morgan Stanley Financial Analyses."

**CLAIMS FOR RELIEF**

**COUNT I**

**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
**Against All Defendants**

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of

the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

42.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act.  Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction.  The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

44.     By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth in full.

47.     The Individual Defendants acted as controlling persons of MSGN within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of MSGN, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, MSGN stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to MSGN stockholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 25, 2021                                    Respectfully submitted,

By   */s/ Shallom Engel*
_____
Shallom Engel
**Engel Law PLLC**
2329 Nostrand Avenue, Suite 100
Brooklyn, NY 11210
Telephone: (917) 573-6555
Email: shallom@engellawpllc.com

*Attorneys for Plaintiff*